IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **ROBERT DARREN MOORE,** ) | |
| **ID # 58191-177,** ) | |
| **Movant,** ) | |
| ) | No. 3:20-CV-3318-N-BH |
| vs. ) | No. 3:19-CR-432-N(1) |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| **Respondent.** ) | Referred to U.S. Magistrate Judge[1] |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings and applicable law, the *Motion Under 28 U.S.C. Section 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on November 2, 2020 (doc. 1), should be **DENIED** with prejudice.

### I.    BACKGROUND

Robert Darren Moore (Movant) challenges his federal sentence in Cause No. 3:19-CR-432-N(1) under 28 U.S.C. § 2255. The respondent is the United States of America (Government).

#### A.    Conviction and Sentencing

On December 12, 2018, Movant was charged by indictment with one count of bank robbery and aiding and abetting in violation of 18 U.S.C. §§ 2113(a) and 2 (Count One), in Cause No. 4:18-CR-236 in the United States District Court for the Eastern District of Texas, Sherman Division. (*See* doc. 1-2.)[2] On September 3, 2019, he consented to the transfer and disposition of the case to the Northern District Texas, where he was being held. (*See* doc. 1.) On October 1, 2019, he pled guilty to Count One of the indictment, under a plea agreement. (*See* docs. 3, 6.)

---

[1] By *Special Order No. 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation.

[2] Unless otherwise indicated, all document numbers refer to the docket number assigned in the underlying criminal action, No. 3:19-CR-432-N(1).

In the plea agreement, Movant stated that he understood and waived his rights to plead not guilty, to have a trial by jury, to have his guilt proven beyond a reasonable doubt, to confront and cross-examine witnesses, to call witnesses in his defense, and to not be compelled to incriminate himself. (*See* doc. 3 at 1.)[3] He understood the nature and elements of the crime to which he was pleading guilty. (*See id*.) The agreement included the maximum penalties the Court could impose for Count One, and it stated that Movant had reviewed the federal sentencing guidelines with counsel and understood that his sentence would be imposed by the Court after consideration of the sentencing guidelines, which were advisory and not binding, and that no one could predict with certainty the outcome of the Court's consideration of the guidelines. (*See id*. at 2-3.) Movant understood that the Court had the sole discretion to impose his sentence and that a plea withdrawal would not be allowed if the sentence was higher than he expected. (*See id*. at 3.) The guilty plea was freely and voluntarily made; it was not the result of force, threats, or of promises apart from those included in the plea agreement. (*See id*. at 5-6.) Movant waived his right to appeal his conviction and sentence and his right to contest his conviction and sentence in a collateral proceeding, except in the limited circumstances specified in the plea agreement. (*See id*. at 6.) He agreed that he had thoroughly reviewed all the legal and factual aspects of his case with counsel and received satisfactory explanations concerning the agreement, his rights, and available alternatives other than entering into the agreement. (*See id*.) He also agreed that he was fully satisfied with his attorney's legal representation, and that after conferring with his counsel, he had concluded it was in his best interest to enter into the plea agreement with all its terms, rather than proceed to trial, because he was guilty of the charged offense. (*See id*.) In exchange, the Government agreed not to bring any additional charges against Movant based on the underlying

---

[3] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

conduct related to his guilty plea and to dismiss any remaining charges in the pending indictment following sentencing. (*See id*. at 5.)

Under the plea agreement, Movant also agreed that a factual resume he signed was true and correct and would be submitted as evidence. (*See id*. at 1.) The factual resume set out the essential elements of Count One, and Movant agreed he committed each of them. (*See* doc. 2 at 1, 3.) Movant stipulated that, on October 12, 2018, he entered a bank in Sherman, Texas, which is in the Eastern District of Texas, handed a threatening and intimidating note to a bank employee, obtained $32,756.00 from the scared and intimidated bank employees, and fled the scene on foot before jumping into a car driven by another individual. (*See id* at 2.) He later bragged to witnesses that he robbed the bank using only a note. (*See id.* at 3.) After being taken into custody by law enforcement, he confessed to his involvement in the bank robbery, gave the name of his co-conspirator who drove the getaway car, and admitted to his involvement in two other bank robberies. (*See id.*) The factual resume was not intended to be a complete accounting of all the facts and events related to the charged offense, and it served a limited purpose of demonstrating that a factual basis existed to support Movant's guilty plea to Count One. (*See id*.)

At his re-arraignment on October 1, 2019, Movant acknowledged under oath that he understood the charges against him, had the opportunity to discuss them with counsel, and committed each of the essential elements of the offense.[4] (*See* doc. 27 at 5-9.) He confirmed he was fully satisfied with the representation and advice he had received from his counsel in the case. (*See id.* at 9.) He affirmed that he had read the plea agreement in its entirety and discussed its terms with his attorney before he signed it, and he understood its contents. (*See id.* at 9-10.) He

---

[4] Movant's re-arraignment and sentencing proceedings in the underlying criminal case were conducted together with the proceedings in Cause No. 3:18-CR-592-N(1). His challenge to his conviction and sentence in Cause No. 3:18-CR-592-N(1) was filed in a separate § 2255 proceeding, Cause No. 3:20-CV-3317-N-BH.

acknowledged that he understood the rights he was giving up by pleading guilty and agreed to waive his right to appeal, except in the limited circumstances stated in the agreement. (*See id.* at 11, 13.) Movant affirmed that his plea was voluntarily and freely made, and that other than the terms set out in the plea agreement, no promise or assurance of any kind had been made to him in an effort to induce his guilty plea. (*See id.* at 12-13.) He acknowledged that by pleading guilty, he was subjecting himself to a maximum term of 20 years' imprisonment and other penalties. (*See id.* at 13-14.) He confirmed that he had read the factual resume in its entirety and had discussed it in detail with counsel, he understood it, and the facts set forth in it were true. (*See id*. at 15-16.) He pled guilty to Count One, and the Court found his guilty plea to be knowing and voluntary. (*See id*. at 15, 18; docs. 8-9.)

On December 2, 2019, the United States Probation Office (USPO) prepared a Presentence Investigation Report (PSR) applying the 2018 United States Sentencing Guidelines Manual. (*See* doc. 11-1 at ¶ 26.) The PSR stated that Movant advised investigators that he was not threatened to commit the bank robberies, and that other than a co-conspirator who drove the getaway car after the bank robbery in Sherman, Texas, there were no other subjects involved. (*See id.* at ¶ 19.) The PSR calculated a base offense level of 20 under U.S.S.G § 2B3.1 for Count One. (*See id.* at ¶ 34.) Two levels were added because U.S. currency was the object of Movant's taking and the property of a financial institution, two levels were added because threats of death were made, and one level was added based on the value of currency taken. (*See id.* at ¶¶ 35-37.) Adjusting for multiple counts, two levels were added under U.S.S.G. § 3D1.4.[5] (*See id.* at ¶¶ 42-45.) Movant qualified as a career offender under U.S.S.G. § 4B1.1(b)(3), and because the statutory maximum term of

---

[5] As discussed, the sentencing proceedings in the underlying criminal case were combined with Cause No. 3:18-CR-592-N(1). Accordingly, the PSR also included his offense in that criminal case in calculating his guideline imprisonment range. (*See* doc. 11-1 at ¶¶ 15, 27-33, 42.)

imprisonment was 20 years or more, but less than 25 years, his offense level became 32. (*See id.* at ¶ 46.) Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 29. (*See id.* at ¶¶ 47-49.) Based on a total offense level of 29 and a criminal history category of VI, the resulting guideline imprisonment range was 151 to 188 months. (*See id.* at ¶ 112.) On January 7, 2020, the USPO submitted an addendum attaching relevant court documents referenced in the PSR. (*See* doc. 12-1.) No objections to the PSR or addendum were filed.

At the sentencing hearing on January 13, 2020, Movant confirmed that he had an opportunity to review the PSR and addendum. (doc. 26 at 3.) His counsel argued that Movant's lack of denial of his involvement and participation in the bank robberies, acknowledgement of his drug problem, and understanding of the seriousness of his offense and the need to get help moving forward were mitigating sentencing factors. (*See id.*) During his allocution, Movant apologized to the victims and family and stated that he should have never committed the crimes; he had learned a valuable lesson and realized a life of crime was not good; he accepted responsibility for his actions; and he had learned to control himself and to not associate with negative people. (*See id.* at 4.) The Government argued for a sentence within the guidelines. (*See id.* at 4-5.) The Court adopted the factual contents of the PSR and addendum as its factual determination in connection with sentencing. (*See id.* at 5-6.) By amended judgment dated February 7, 2020, Movant was sentenced to 168 months' imprisonment, to run concurrently with the sentence imposed in Cause No. 3:18-CR-592-N(1), and to be followed by a three-year term of supervised release. (*See* doc. 16 at 1-3.) On appeal, appellate counsel filed a brief under *Anders v. California*, 386 U.S. 738 (1967), and the appeal was dismissed on August 3, 2020. *See United States v. Moore*, 966 F.3d 886 (5th Cir. 2020). Movant did not file a petition for a writ of certiorari with the Supreme Court.

**B.      Substantive Claim**

Movant asserts a single ground of relief for "[d]enial of ineffective [sic] assistance of counsel." (No. 3:20-CV-3318-N-BH, doc. 1 at 6.) On January 4, 2021, the Government filed a response. (*See id.*, doc. 5.) Movant did not file a reply.

## II.      SCOPE OF RELIEF UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well-established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[ ] objectives" of the procedural default doctrine "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

### III.     INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the movant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 697. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (recognizing that the inquiry focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

In his single ground for relief, Movant asserts that counsel was ineffective because he "did not perform his job duties [because he] failed to bring up at court that I had a co-conspirator in my Bank Robberies." (No. 3:20-CV-3318-N-BH, doc. 1 at 6.) He claims that the co-conspirator "put fear in my life by putting a gun to my head and making me commit those [r]obberies." (*Id.*, doc. 1 at 10.) He alleges that "I told my lawyer but he didnt [sic] contact the Federal agents." (*Id.*) According to Movant, the alleged co-conspirator "is a predator" who "wrote the notes on every Bank Robbery that [Movant] committed," "didnt [sic] get caught," and "got away with 20,000 dollars of the banks [sic] money." (*Id.*, doc. 1 at 10-11.) Movant generally asserts that counsel "didnt [sic] do nothing for me at my sentencing." (*Id.*, doc. 1 at 11.) Liberally construed, Movant claims counsel was ineffective in failing to adequately investigate and present mitigating evidence of coercion or duress by a co-conspirator at sentencing. (*See id.*, doc. 1 at 6, 10-11.)

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial," however. *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *see also United States v. Glinsey*, 209 F.3d 386, 393 (5th Cir. 2000) (stating, in context of direct appeal, that "[t]o establish his failure to investigate claim, [the defendant] must allege with specificity what the investigation would have revealed and how it would have benefitted him."). "[T]here is no presumption of prejudice based on the failure to investigate." *Gonzalez v. United States*, Nos. 5:19-CV-145, 5:15-CR-1112-01, 2020 WL 1893552, at *3 (S.D. Tex. Jan. 24, 2020) (citing *Woodard v. Collins*, 898 F.2d 1027, 1029 (5th Cir. 1990)).

Even assuming for purposes of this motion only that counsel rendered deficient performance by failing to investigate and present evidence regarding Movant's co-conspirator for purposes of sentencing as alleged, Movant must also show *Strickland* prejudice, i.e., a reasonable probability that the outcome of the proceedings would have been different absent counsel's alleged deficiencies. To show prejudice in the sentencing context, a movant must demonstrate that the alleged deficiency of counsel created a reasonable probability that his sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice."). One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *See Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992).

Here, in his plea documents and at his arraignment, Movant admitted to committing each of the essential elements of the offense of conviction, and affirmed that the facts set forth in his factual resume were true. (*See* doc. 2; doc. 3 at 1; doc. 27 at 7-9, 15-16.) In the factual resume, Movant stipulated that after robbing the bank in Sherman, Texas, he fled on foot and jumped in the passenger seat of car driven by another individual. (*See* doc. 2 at 2.) He later bragged to witnesses that he robbed the bank using only a note. (*See id.* at 3.) After he was taken into custody, he confessed to law enforcement about his involvement in the bank robbery, and he gave the name of his co-conspirator who drove the getaway car. (*See id.*) Further, the PSR shows Movant advised investigators during the underlying criminal investigation that "he was not threatened to commit the robberies and, other than the coconspirator, there was no other subject(s) involved in the robberies." (doc. 11-1 at ¶ 19.) At sentencing, he testified under oath that he had an opportunity to review the PSR; he did not raise any concerns or objections to the PSR, and he told the Court that he was "responsible for [his] action" and was "very sorry for what [he] did[.]" (doc. 26 at 3-4.)

Movant's unsubstantiated allegations of coercion and duress are unsupported by the record, including his plea documents and sworn statements to the Court, and are insufficient to establish prejudice. *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."). Because Movant has not provided any facts or evidence showing that his sentence would have been less harsh had counsel further investigated or argued Movant's allegations of coercion or duress by an alleged co-conspirator during sentencing, he fails to satisfy the prejudice prong of *Strickland*, and his claim should be denied.[6]

## IV.  EVIDENTIARY HEARING

To the extent Movant seeks an evidentiary hearing, none is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A movant "is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely merit of [his] allegations.'" *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (citation omitted). "[B]are, conclusory allegations unsupported by other indicia of reliability in the record, do not compel a federal district court to hold an evidentiary hearing." *Ross*, 694 F.2d at n.2. Here, Movant has failed to come forward with independent indicia in support of the likely merit of his claim, and his unsupported allegations do not entitle him to an evidentiary hearing. *See Reed*, 719 F.3d at 373.

---

[6] Given the evidence in the record, Movant also appears to ignore the potential loss of his three-level deduction for acceptance of responsibility had counsel argued his unsubstantiated allegations of coercion and duress at sentencing. (*See* doc. 11-1 at ¶¶ 47-49.)

## V. RECOMMENDATION

The *Motion Under 28 U.S.C. Section 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on November 2, 2020 (doc. 1), should be **DENIED** with prejudice.

**SIGNED this 19th day of September, 2023.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE